## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES W. MORGAN** | : | Case No. 1:21-cv-481 |
| 8673 Emerald Isle | : | |
| Mason, Ohio  45040 | : | Judge _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **DS SMITH HOLDINGS, INC.** | : | **COMPLAINT WITH JURY DEMAND** |
| 3475 Piedmont Rd., Suite 1525 | : | **ENDORSED HEREON**_____ |
| Atlanta, GA  30305 | : | |
| | : | |
| And | : | |
| | : | |
| **INTERSTATE RESOURCES, INC.** | : | |
| 3475 Piedmont Rd., Suite 1525 | : | |
| Atlanta, GA  30305 | : | |
| | : | |
| Defendants. | : | |

### PARTIES

1.      Plaintiff James W. Morgan ("Morgan" or "Plaintiff") is a resident and citizen of the State of Ohio.

2.      Defendant DS Smith Holdings, Inc. ("DS Smith") is incorporated in Delaware with its United States headquarters in Atlanta, Georgia.  DS Smith Holdings, Inc. is a wholly owned subsidiary of DS Smith PLC, a British company.  At all times relevant to this complaint DS Smith conducted business in the State of Ohio and was an employer within the meaning of federal and Ohio law.

3.      Defendant Interstate Resources, Inc., ("Interstate") is a Delaware corporation headquartered in Atlanta, GA.   Interstate is a wholly owned subsidiary of DS Smith Holdings,

Inc.  Interstate conducts business in the state of Ohio and is an employer within the meaning of federal and Ohio law.

## JURISDICTION AND VENUE

4.　　This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because Plaintiff's federal claims arise under the laws of the United States, specifically the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. § 2000 *et seq.*

5.　　This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims derive from the same operative facts and are so related to his federal claims over which the Court has original jurisdiction that they form a part of the same case or controversy.

6.　　Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of his termination from Interstate.

7.　　Plaintiff received a Notice of Right to Sue from the EEOC dated April 20, 2021. (Attached as Ex. A).  This Complaint is filed with 90 days of Plaintiff's receipt of that notice.

8.　　Venue is proper in this division and district pursuant to 28 U.S.C. § 1391 because Defendants employed Plaintiff in this division and district.

## FACTUAL ALLEGATIONS

9.　　Plaintiff was born in the United States in 1958 and is a U.S. citizen.

10.　　He began working in the paper and packaging industry in 1988, and in February 2007 was hired as Executive Vice President by Defendant Interstate.

11.　　In November 2006, prior to beginning employment with Interstate, Plaintiff executed an Employment Agreement with Interstate. (Attached at Ex. B).

12.     Plaintiff Morgan was a loyal, dedicated, and highly successful employee throughout his employment with Interstate as President, COO and was promoted to the position of Global President Primary Materials/Energy.

13.     Plaintiff Morgan was at all times fully qualified for the positions he held at Interstate and led the business until August 25, 2017.

14.     On August 25, 2017, Interstate was acquired by DS Smith PLC and its wholly-owned U.S. subsidiary, DS Smith Holdings, Inc.  Upon acquiring Interstate, DS Smith assumed Plaintiff's Employment Agreement.

15.     Prior to the acquisition, DS Smith and its Group Chief Executive Miles Roberts negotiated with Morgan to remain with DS Smith to work as their Managing Director leading the North American Paper and Packaging ("NAPP") business reporting directly to Roberts. Additional terms of Plaintiff's employment with DS Smith were set forth in an offer letter dated August 17, 2017.  This included his compensation which provided for an annual bonus up to 100 % of his base salary split between cash and deferred equity shares.  The shares were to be put in a trust with a 3-year vesting date.  However, if Morgan retired from the business before the vesting date, he would still be eligible to receive the shares because retirement was covered under the category of "good leaver" under the plan.  Morgan's compensation also included long term incentive under the DS Smith Performance Share Plan ("PSP").

16.     In October 2017, in anticipation of his continued employment with Defendant and as an inducement for Plaintiff to continue to lead NAPP beyond the 3 months required by the Change in Control provision of his Employment Agreement, Defendant offered, and Plaintiff accepted a Second Amendment to his 2006 Employment Agreement.  This Amendment extended

the period for Plaintiff to voluntarily terminate his employment through August 25, 2019, and still receive the severance benefits under his contract. (Attached at Exhibit ___).

17.     In the months preceding October 2018, the paper and packaging markets began to degrade. Prices for paper, and particularly for export paper, began to decline. This decline put a great deal of pressure on the business that Plaintiff Morgan led. Despite external factors beyond Morgan's control, the results reported were described as "[g]ood Domestic performance offset by impact of export paper prices."

18.     For more than two years, in the Year End Reports for the years ending April 30, 2018, and April 30, 2019, Morgan and his team were praised for the results of the business, for their delivery on targeted synergies, and for their successful integration into DS Smith.

19.     In June, July and August 2019, Morgan had a number of discussions with DS Smith leadership, including Roberts, about the Change of Control provision in his Employment Agreement and the impending August 25, 2019 deadline for Morgan to voluntarily retire with severance.

20.     During a visit to the U.S. on or about July 18, 2019, as he was departing for the Indianapolis airport, Roberts assured Plaintiff that he nothing to worry about concerning the expiration of the Change of Control provision. Roberts provided an example of Mark Smith, CEO of Plastics, and that Plaintiff could trust DS Smith to do the right thing. In reliance on Roberts' assurance and the praise that Plaintiff had received concerning his performance, Plaintiff did not retire by August 25 and continued his employment.

21.     In July 2019, pursuant to Defendant's annual bonus plan and his good work performance, Plaintiff was awarded an annual bonus. Seventy-five percent of his bonus was paid

in cash, and the remaining twenty-five percent was converted to stock.  The portion converted to stock amounted to $116,781.78.

22.     On Saturday, October 5, 2019, Roberts emailed Plaintiff Morgan to schedule a "short catch up" for the following day.  During the telephone conversation on October 6, Mr. Roberts terminated Plaintiff Morgan's employment effective immediately.  Mr. Roberts told Plaintiff Morgan that the termination was nothing to do with Plaintiff Morgan personally.

23.     The next day October 7, 2019, DS Smith made an announcement that the change was being made to align the North American unit more closely to the European Divisions.  As a result, the European and North American Divisions were merging to create global Supply and Packaging teams and that a new Managing Director would be named, who would report to Mr. Roberts.

24.     Plaintiff should have been treated as a "good leaver" under the DS Smith PSP because his employment ended due to a restructuring and Defendants were not directly replacing his position.  As a good leaver Plaintiff was entitled to the equity portion of his 2018-19 bonus and should have been allowed to retain the shares he earned under the PSP.

25.     Defendants conceded that Plaintiff was terminated "without cause" and continued to pay Plaintiff his base salary for 12 months as severance.

26.     Subsequent to his termination, a number of Morgan's responsibilities were assumed by a substantially younger employee, Keith Ledbetter and two substantially younger non-U.S. born Europeans Stefano Rossi and Niels Flierman.  In addition, DS Smith terminated several other U.S. born older employees in North American management, 5 of 6 were over the age of 40 with 4 at least 60 years old.

27.     Upon information and belief, Defendants engage in a pattern and practice of national origin and age discrimination.

<strong><u>COUNT I</u></strong>

<strong>(National Origin Discrimination – Title VII)</strong>

28.      Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

29.     Plaintiff's nation of origin is the United States of America, and he was fully qualified for his position at all relevant times.

30.     Defendants' conduct in discriminating against Plaintiff includes, but is not limited to, treating him less favorably than similarly-situated employees because of Plaintiff's national origin and terminating his employment because of his national origin and replacing Plaintiff with foreign born individuals in violation of Title VII.

31.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

32.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages for which he is entitled to recovery.

<strong><u>COUNT II</u></strong>

<strong>(National Origin Discrimination – O.R.C. Section 4112)</strong>

33.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

34.     Plaintiff's nation of origin is the United States of America, and he was fully qualified for his position at all relevant times.

35.     Defendants' conduct in discriminating against Plaintiff includes, but is not limited to, treating him less favorably than similarly-situated employees because of Plaintiff's national

origin and terminating his employment because of his national origin and replacing Plaintiff with foreign born individuals in violation of Ohio law.

36.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

37.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages for which he is entitled to recovery.

**COUNT III**

**(Age Discrimination – ADEA)**

38.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

39.     Plaintiff is over 40 years of age.

40.     Plaintiff was fully qualified for his position at all relevant times.

41.     Defendants' conduct in discriminating against Plaintiff includes, but is not limited to, treating him less favorably than similarly-situated, significantly younger employees, terminating his employment on account of his age in violation of the ADEA, and replacing Plaintiff with younger, less qualified individuals.

42.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

43.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages for which he is entitled to recovery.

**COUNT IV**

**(Negligent/Intentional Misrepresentation)**

44.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

45.     Defendants were aware that Plaintiff had a contractual right to retire/voluntarily leave employment prior to August 25, 2019, and that he was considering exercising that right.

46.     Plaintiff discussed this Amendment to his Employment Agreement with multiple members of Defendant's management including Group Chief Executive Miles Roberts.  Roberts negligently or intentionally provided false information to Plaintiff when discussing the Change in Control provision of Plaintiff's Employment Agreement.

47.     Plaintiff justifiably relied upon Roberts' information and did not voluntarily leave his employment by August 25, 2019.

48.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered damages, including, but not limited to the loss of equity, PSP shares and bonus shares, for which he is entitled to recovery.

## COUNT V

### (Fraudulent Inducement)

49.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

50.     Defendants were aware that Plaintiff had a contractual right to retire/voluntarily leave employment prior to August 25, 2019, and that he was considering exercising that right.

51.     Plaintiff discussed this Amendment to his Employment Agreement with multiple members of Defendant's management including Group Chief Executive Miles Roberts.  Roberts made an actual or implied false representation that Plaintiff remained in the future plans for DS Smith and that he should trust DS Smith without any additional contractual commitment.

52.     Roberts knew that his representation was false or made it with recklessness or utter disregard for its truthfulness

53. Roberts intended for Plaintiff to rely on the representation and Plaintiff was justified in his reliance.

54. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered damages, including, but not limited to the loss of unvested PSP shares and bonus shares for which he is entitled to recovery.

**WHEREFORE**, Plaintiff James Morgan prays for the following relief:

a. That Defendant be enjoined from further unlawful conduct as described in the Complaint;

b. That Plaintiff be reinstated to employment effective October 6, 2019 and awarded all lost pay and benefits, including lost equity shares;

c. That Plaintiff be awarded compensatory damages, including emotional distress;

d. That Plaintiff be awarded punitive damages;

e. That Plaintiff be awarded pre-judgment interest;

f. That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years;

g. That Plaintiff be awarded reasonable attorneys' fees and costs; and,

h. That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

*/s/* George M. Reul, Jr.
George M. Reul, Jr. (0069992)
Trial Attorney for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, 9th Floor
Cincinnati, Ohio 45202
PH: 513/721-1975 – FX: 513/651-2570
*greul@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/* George M. Reul, Jr.