UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 28, 2024

Mr. Vernon Phillip Hill IV
Mr. Chad Allan Shultz
Gordon Rees Scully Mansukhani
55 Ivan Allen Jr. Boulevard, N.W.
Suite 750
Atlanta, GA 30308

Mr. George M. Reul Jr.
Freking Myers & Reul
600 Vine Street, Ninth Floor
Cincinnati, OH 45202

Mr. Tyler G. Tarney
Gordon, Rees, Scully & Mansukhani
41 S. High Street, Suite 2495
Columbus, OH 43215

Re: Case No. 23-3866, *James Morgan v. DS Smith Holdings, Inc., et al*
Originating Case No. : 1:21-cv-00481

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0284n.06

Case No. 23-3866

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 28, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JAMES W. MORGAN | ) |
|     Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| INTERSTATE RESOURCES, INC., dba DS SMITH HOLDINGS, INC., | ) OPINION |
|     Defendant-Appellee. | ) |

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

BUSH, Circuit Judge. James Morgan was terminated from his executive job at DS Smith Holdings, Inc. ("DSS") after his division at DSS had a financially unsuccessful year. He brought multiple claims against the company, including for age discrimination and fraud. The district court granted summary judgment to the defendants on all claims. On appeal, Morgan contends that the district court failed to properly weigh the evidence in his favor. We affirm.

**I.**

In November 2006, Interstate Resources, Inc. ("IRI") hired Morgan, born in 1958, as Executive Vice President. By 2017, Morgan had been promoted to President and was responsible for running the company's paper business. On August 25, 2017, DSS purchased IRI and assumed Morgan's employment contract. The new owner appointed Morgan, who was then 59 years old,

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

as head of its North American Packaging and Paper ("NAPP") division. In that role, he reported to Miles Roberts, DSS's Group Chief Executive.

There are a few contractual provisions relevant to Morgan's claims. First, Morgan's Employment Agreement, which was assumed by DSS after its acquisition of IRI, contained a change-in-control provision. The exercise of this change-in-control provision enabled Morgan to receive a severance payment equal to one year's salary in the event IRI was acquired by another company, as long as he continued to work for the new owners for at least three months.[1] That provision was triggered when DSS bought IRI. In October 2017, Morgan agreed to amend that term such that, in addition to the three-month requirement, he would need to retire before August 25, 2019, to receive the severance payment. Second, IRI, in coordination with DSS, offered Morgan a cash retention bonus of $910,898 to be paid in two equal parts if he remained employed on the first and second anniversaries of DSS's acquisition—or on August 25, 2018 and 2019. Third, as the Managing Director of NAPP, he was eligible to participate in a Deferred Share Bonus Plan ("DSBP") and Performance Share Plan ("PSP"), which allocated awards if he stayed in his position for at least three years. If Morgan left before three years' time, the awards could still vest if DSS deemed Morgan a "Good Leaver." A "Good Leaver" is an employee who, for example, retires on good terms.

In July 2019, Morgan told Roberts that he was considering retiring. He voiced concerns about whether his DSBP and PSP awards and change-in-control payment would vest. Morgan claims that Roberts assured him DSS had no plans to replace him, but Roberts denies making any such statement.

---

[1] The Agreement provides that Virginia law governs the execution and performance of the contract.

2

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

NAPP met its annual and monthly financial forecasts in its first fiscal year with Morgan at the helm. But NAPP began to slip soon after: five months into the 2018 fiscal year, Morgan emailed his employees to inform them that they would need to recover $3.5 million to meet their forecasted performance level. Roberts texted Morgan a few months later letting him know that he noticed "a drop on over $4 [million]" in April, adding that "[t]his is a problem." Morgan's awareness that NAPP needed to right ship, it ended the year below forecast across most segments, and its full year forecast for earnings before interest, taxes, depreciation, and amortization declined by $6.5 million. Notwithstanding NAPP's poor performance, Roberts still awarded Morgan a bonus.

In July 2019, Roberts sent Thomas Jakobsen, one of DSS's packaging managers, to NAPP to act as a consultant. The two had previously discussed Jakobsen's assuming a more permanent role at NAPP and Morgan's vision for the future of the company. In May 2019, for example, Roberts sent Jakobsen hand-drawn charts depicting NAPP's current organizational structure and how he would like it to look in the future. The present-day chart showed Morgan as the head of NAPP, overseeing the Packaging and Paper divisions, as Managing Director. The future chart created separate roles for the Managing Director of Paper and Managing Director of Packaging but did not indicate who would fill those roles. Jakobsen ultimately declined any permanent position at NAPP, opting instead for the consulting arrangement.

In notes dated August 20, 2019, Jakobsen described a multitude of problems: "a complete lack of NAPP strategy and direction," "[l]ittle real buy-in to DSS strategy," "huge cap[a]bility issue[s] in top management," and "no path/chance to change to DSS way of working." Jakobsen concluded that "[t]he clear underlying problem [was] top management" and that "[w]ithout the replacement of the top people all good intentions will not change [the] direction of the business."

3

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

He conveyed these observations to Roberts on a phone call on the same date and expanded on them in a 45-page report presented to Roberts in September 2019.

Talks about terminating Morgan began in late August 2019. On August 28, Roberts contacted DSS's legal team to inquire about Morgan's contract and what the termination process would be. Roberts terminated Morgan on October 6, 2019. At least three other NAPP employees over the age of 60 were terminated around the same time. Following Morgan's termination, DSS appointed NAPP's Chief Financial Officer, Kevin Ledbetter, as interim Managing Director. Ledbetter did not replace Morgan as Managing Director, but instead took on Morgan's duties in addition to his existing duties as CFO and received a salary supplement. Roberts discussed with Jakobsen the possibility of him taking over as NAPP Managing Director, but that never came to fruition. In March 2022, DSS appointed Jeff Jones, born in 1966 and formerly head of Shared Services at DSS, to permanently fill the role.

Morgan brought five claims against DSS: (1) national origin discrimination, in violation of Title VII; (2) national origin discrimination, in violation of Ohio Rev. Code § 4112; (3) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"); (4) negligent/intentional misrepresentation; and (5) fraudulent inducement. DSS moved for summary judgment.

The district court granted DSS summary judgment on all five claims, three of which are relevant to this appeal. First, as to his age discrimination claim, the district court concluded that Morgan failed to present sufficient evidence to show that DSS's stated, nondiscriminatory reason for terminating him—poor performance—was pretextual. Second, as to his intentional misrepresentation and fraudulent inducement claims, the district court concluded that Morgan did not provide any evidence that Roberts harbored an intention to fire him during their July 18, 2019,

4

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

conversation when Roberts encouraged Morgan not to retire. Accordingly, the district court determined that Morgan could not establish that Roberts's July 18 statements were misrepresentations.

Morgan now appeals the district court's determinations regarding his age discrimination, intentional misrepresentation, and fraudulent inducement claims.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368 (6th Cir. 2024). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant has met the burden of production, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At bottom, our inquiry is whether, considering the applicable evidentiary standards, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Liberty Lobby*, 477 U.S. at 252.

## III.

Morgan raises two claims on appeal. First, regarding his age discrimination claim, he argues that the district court discounted evidence that was sufficient to rebut DSS's stated, nondiscriminatory reason for terminating him. Second, regarding his intentional misrepresentation and fraudulent inducement claims, Morgan contends that there is a material dispute of fact as to

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

whether Roberts lied during their July 18, 2019, conversation, and that the district court ignored inferences in Morgan's favor.

**A.**

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on his age discrimination claim, then, Morgan must establish that age was the but-for cause of DSS's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Because he attempts to do so through indirect evidence, Morgan's claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). Under *McDonnell Douglas*, an employee must first establish a prima facie case of age discrimination. *Willard*, 952 F.3d at 807 (citation omitted). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer satisfies that requirement, then the burden moves back to the employee to demonstrate that the employer's stated reason is pretextual. *Id.* Even if the employee provides some evidence of pretext, an age discrimination claim will not survive summary judgment if a reasonable jury cannot "conclude, based on the record, that age was the but-for cause of the challenged action." *Alberty v. Columbus Township*, 730 F. App'x 352, 360 (6th Cir. 2018).

*Prima facie case.* Although the district court assumed Morgan established a prima facie case without analysis, DSS continues to dispute that he has done so. For purposes of summary judgment, we conclude that he has. To make out a prima facie case, Morgan must show that "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was

6

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

replaced by a younger worker" or younger workers were treated more favorably. *Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1130 (6th Cir. 2020) (citation omitted); *Willard*, 952 F.3d at 808. This is a burden "easily met." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011) (citation omitted).

 1. Morgan sufficiently demonstrated that he was qualified for his position. To determine whether a plaintiff is qualified for the relevant job at the prima facie stage, we focus on his or her objective qualifications. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (en banc). If a plaintiff can point to "credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field," such as education and experience in the industry, then that is good enough for a prima facie case. *Id.* at 575–76. Morgan had decades of experience in the paper industry, including eleven years as an executive at IRI, before DSS selected him to become Managing Director of NAPP. Though DSS now points out that Morgan lacked experience in packaging specifically, it obviously determined that his experience was sufficient when it put him in charge of NAPP. DSS also says that Morgan was unqualified because he failed to meet performance objectives. However, DSS cannot rely on Morgan's poor performance to disprove his prima facie case because that is the nondiscriminatory reason it provides for his termination. *See id.* at 574.

 2. Next, Morgan put forth sufficient evidence that he was replaced by a younger worker. DSS is correct that Ledbetter did not "replace" Morgan during his interim appointment because he assumed the Managing Director's duties while keeping his own. *Sukari v. Akebono Brake Corp.*, 814 F. App'x 108, 112 (6th Cir. 2020) (citing *Lilly v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)). But, two years later, an official (and younger) replacement, Jeff Jones, was named. *Cf. Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) (explaining that, even where a

7

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

replacement employee is over 40 and therefore within the same protected class, an age difference of over six years can create a triable issue of fact). Even though Jones was appointed from inside DSS's ranks, he is considered a replacement because he took over the Managing Director role entirely. *Stearman v. Ferro Coals, Inc.*, 751 F. App'x 827, 831 (6th Cir. 2018) ("Replacement occurs only when the company hires a new person or reassigns an employee to take over the plaintiff's job.").

*Pretext.* Even though Morgan established a prima facie case of age discrimination, the district court correctly found that he failed to create an issue of material fact as to whether DSS's justification for terminating him was pretextual. DSS claims that it fired Morgan because NAPP failed to meet its performance objectives for the 2018 fiscal year. To rebut DSS's legitimate, nondiscriminatory justification at the summary judgment stage, Morgan must "identify genuine disputes of fact regarding the legitimacy of the defendant's stated reasons." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 240 (6th Cir. 2015). He can do this by presenting evidence that the proffered justification "(1) has no basis in fact, (2) did not actually motivate [DSS's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (quoting *Wexler*, 317 F.3d at 576). Morgan's evidence falls into the first two buckets.

1. He first contends DSS's proffered reason for terminating him has no basis in fact. This method is "essentially an attack on the credibility of the employer's proffered reason and consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794 (6th Cir. 2006)) (cleaned up). But, if "the employer can demonstrate an honest belief in its proffered reason," meaning that it "reasonably relied on particularized facts that were before it at the time

8

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

the decision was made," then no inference of pretext is warranted. *Id.* (cleaned up). That is the case here. DSS presented ample evidence that NAPP failed to meet its financial objectives throughout the 2018 fiscal year with Morgan in charge. The company sent Jakobsen to assess the situation and to recommend ways to improve the NAPP division. After he relayed his conclusion, both orally and in a written 45-page report, that top management was the problem, Roberts started looking into terminating Morgan. It therefore appears that DSS "made a reasonably informed and considered decision before taking the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007) (internal quotation marks and citation omitted).

On appeal, Morgan contends that the honest-belief rule is inapplicable because, in addition to claiming that DSS's reason for terminating him has no basis in fact, he also argues that it had other motivations. This argument fails. It is true that the honest-belief rule only applies to a plaintiff's pretext argument if it is premised on the employer's nondiscriminatory justification having no basis in fact. But it still rebuffs the no-basis-in-fact argument if the plaintiff also argues the justification was pretextual for other reasons as well. *See*, *e.g.*, *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286–87 (6th Cir. 2012) (applying the honest-belief rule to plaintiff's no-basis-in-fact argument, but not to her argument that the provided reason was insufficient to warrant her termination). Morgan must therefore demonstrate that DSS's belief was not honestly held. *Id.* at 286 (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). He has not done so. He claims that market forces, rather than his leadership, were the cause of NAPP's poor performance. But he offers nothing other than his own testimony to prove that was the case. And his "bare assertion that [DSS's] proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger*, 681 F.3d at 285.

9

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

    2. Morgan next argues that DSS had other motivations to terminate him besides NAPP's poor performance—namely, the desire to replace him with the younger Jakobsen. Under this "indirect" method of challenging an employer's credibility, "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). The plaintiff must therefore provide evidence, beyond that making up his or her prima facie case, that "tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.*

    DSS contends that the no-basis-in-fact and other-motivations methods of proving pretext are mutually exclusive because, under the former, the employer's nondiscriminatory justification must be untrue, while the latter requires admitting that it is true. We need not answer that question now because, even if they are not mutually exclusive, Morgan fails to present sufficient evidence that DSS had other, discriminatory reasons to terminate him.

    Morgan presents zero direct evidence that it was more likely that Roberts wanted terminate Morgan based on his age than to terminate Morgan because of his poor performance. Instead, Morgan relies on insufficient circumstantial evidence. First, he notes that Roberts never confronted him about his poor performance, even awarding him a bonus in July 2019. He says that Roberts's termination went against company policy, which "generally" required a performance review documenting his shortcomings before firing him. But that does not tend to prove that Roberts possessed a discriminatory motive. Moreover, "[a]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of

10

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005)).

Second, he says that three other NAPP employees over the age of 60 were terminated around the same time as him. Whether this "is relevant . . . is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). In this case, all we have to go on is Morgan's assertion that the other three NAPP employees, who were over 60, were fired. We therefore lack the ability to assess whether DSS demonstrated any pattern of discrimination, let alone whether such a pattern is enough to rebut its well-established justification for terminating Morgan. *Cf. Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 399–401 (6th Cir. 2013) (finding that affidavits from other terminated employees alleging discriminatory motives by the employer did not support a finding of pretext). Finally, considering NAPP's poor performance—which Morgan has repeatedly acknowledged—"[i]t would take a great deal of unwarranted speculation for a jury to infer a discriminatory animus" from the fact that Roberts wanted to hire Jakobsen. *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 551 (6th Cir. 2011). [[R.27, PageID 855, 880]].

All in all, "an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Miles*, 946 F.3d at 886 (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Not only is the record devoid of any evidence that DSS terminated Morgan because of his age, but there is also affirmative evidence supporting its stated justification. We therefore affirm the grant of summary judgment to DSS on Morgan's ADEA claim.

11

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

**B.**

Turning now to Morgan's Virginia state-law claims for negligent/intentional misrepresentation and fraudulent inducement. First, a word on the applicable evidentiary standard for these claims. Because both sound in fraud, their elements must be proven with clear and convincing evidence, which "is higher than a mere preponderance." *Sweely Holdings, LLC v. SunTrust Ban*k, 820 S.E.2d 596, 604 (Va. 2018); *see also Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Under this "heightened burden of proof, . . . [Morgan] must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 944 (6th Cir. 1990) (overruled in part on other grounds by *Salve Regina College v. Russell*, 499 U.S. 225 (1991)).

To prove negligent or intentional misrepresentation, Morgan must "show a false representation of a material fact," made negligently or intentionally, respectively; "reliance on that false representation to [his] detriment; and resulting damage." *Caperton v. A.T. Massey Coal Co.*, 740 S.E.2d 1, 9 (Va. 2013) (internal quotation marks and citations omitted) (referring to negligent misrepresentation as "constructive fraud"). There are two types of fraudulent inducement claims: one to enter into a contract, and one to perform a contract. *Mod. Oil Corp. v. Cannady*, No. 141839, 2015 WL 10990113, at *4 (Va. Dec. 30, 2015). Morgan brings the latter. That requires him to show that DSS made a misrepresentation "entic[ing him] to perform an executory contract that, but for the fraud, he would not have continued to perform." *Id.*; *see also Devine v. Buki*, 767 S.E.2d 459, 466 (2015) (quoting *Ware v. Scott*, 257 S.E.2d 855, 857 (Va. 1979)). The "misrepresentation must involve an affirmative false statement or 'concealment' by 'word or conduct' that amounts to the 'equivalent of a false representation.'" *Cannady*, 2015 WL

12

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

10990113, at *4 (quoting *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717–18 (Va. 2001)).

To the extent Morgan has not waived his negligent misrepresentation claim by failing to defend it in response to DSS's summary judgment motion, he does not allege facts that support the claim. Negligent misrepresentation, quite manifestly, requires that the plaintiff prove the defendant negligently made a misrepresentation. In his response to DSS's summary judgment motion and on appeal, Morgan insists that Roberts intentionally lied to him about Morgan's future with the company. We therefore affirm the district court's grant of summary judgment on this claim.

We next turn to Morgan's claims for intentional misrepresentation and fraudulent inducement. Morgan has not provided sufficient evidence to prove, under the heightened evidentiary standard for both fraud claims, that DSS made a material misrepresentation. He alleges that Roberts materially misrepresented DSS's present intentions in a conversation regarding Morgan's benefits and retirement on July 18, 2019. Morgan says that, even though Roberts intended to fire him, he nevertheless promised Morgan that DSS had him in its long-term plans, wanted to make sure he was happy, and had treated its former CEO of another division fairly when he left and would treat Morgan the same. Morgan asserts that his reliance on those statements enticed him to stay employed at DSS and to not exercise his right under his contract's change-in-control provision, under which DSS would have paid him one year's salary if he had retired before August 25, 2019.

No. 23-3866, *Morgan v. Interstate Resources, Inc., et al.*

Both claims require Morgan to prove, under the heightened evidentiary standard for fraud, that Roberts's statements were intentionally false.[2] To do so, he cites Roberts's previous communications with Jakobsen regarding a permanent role in NAPP and his inquiry with a DSS employee regarding the notice provision in Morgan's contract. But, even construed in the light most favorable to Morgan, that evidence does not show that Roberts intended to fire Morgan during their July 18, 2019 conversation. First, the conversations Roberts had with Jakobsen regarding a permanent role at NAPP did not yet involve suggesting that Jakobsen would assume Morgan's position. Roberts had instead suggested that Jakobsen might take over NAPP's packaging division. In May 2019, he sent Jakobsen organizational charts depicting the restructuring of NAPP's leadership that occurred after Morgan's termination, but nothing in the chart indicated that Roberts intended to fire Morgan. Second, Roberts's inquiry regarding Morgan's contract does not prove that he intended to fire Morgan on July 18. In that July 1, 2019 email, he simply asked, "Just for my information, what is the notice period from Jim to us?" R.39-1, PageID 3137. That may tend to prove that Roberts had questions regarding Morgan's duties under his employment contract, but it says nothing about whether he harbored an intention to fire Morgan two-and-a-half weeks later.

Morgan has therefore not created a genuine issue of material fact as to his state-law intentional misrepresentation or fraudulent inducement claims.

## IV.

For the reasons stated above, we **AFFIRM** the judgment of the district court.

---

[2] The parties debate whether Roberts's alleged statements can form the basis of these claims as a matter of law. *See, e.g.*, *Burton v. Overnite Transp. Co.*, No. LU-2450-1, 1992 WL 884768, at *5 (Cir. Ct. Va. June 29, 1992) (holding that representations about employment security and motivational words of encouragement to remain at a job are "not specific or immediate enough to form a basis for fraud and deceit"). But we need not decide that question because, even if the statements can support Morgan's fraud claims, a reasonable jury could not conclude that he is entitled to a verdict on these claims under the heightened evidentiary standard.

14

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-3866

JAMES W. MORGAN,

    Plaintiff - Appellant,

v.

INTERSTATE RESOURCES, INC., dba DS Smith Holdings, Inc.,

    Defendant - Appellee.

> **FILED**
> Jun 28, 2024
> KELLY L. STEPHENS, Clerk

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*

Kelly L. Stephens, Clerk